UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Docket No.: 3:02CR178(EBB) |
| | : | |
| ORETEGUS EADDY, a.k.a. "Wes" | : | August 16, 2005 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF A MOTION
FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1,
AND TITLE 18, U.S.C. § 3553(e)**

**I.   INTRODUCTION**

U.S.S.G. Section 5K1.1 provides that upon the filing of a motion by the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, a sentencing court may depart form the applicable Guidelines sentencing range.  Title 18, United States Code, Section 3553 provides that upon the filing of a motion by the government the district court may sentence the defendant without regard to the applicable statutory minimum term of imprisonment.  The United States respectfully submits that the defendant has provided substantial assistance in the investigation and prosecution of others who have committed criminal offenses.

**II.   FACTS OF THE OFFENSE**

On March 22, 2002, the defendant was arrested and charged in the state with various narcotics trafficking offenses.  The case was subsequently adopted by federal authorities, and in June of 2002 a Grand Jury returned an indictment charging the defendant, and co-defendants Raul Ayala and Jose Robles, with one count of Conspiracy to Possess with Intent to Distribute heroin, cocaine and five grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846.  The defendant was also charged in Count Four with Possession with Intent to Distribute

heroin, cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1).[1] As set forth in the Presentence Investigation Report ("PSR"), the defendant his co-defendants, conspired to possess with intent to distribute cocaine, cocaine base ("crack") and heroin. The investigation involved numerous undercover, controlled purchases of narcotics from the defendant and his co-defendants. Based upon the recitation of the facts as set forth in the PSR, and the representations by government counsel and the defendant at the time that the defendant entered his guilty plea, the government is confident that the district court has been fully apprized of the facts surrounding the defendant's commission of the offense of conviction and the relevant offense conduct.

### III.   NATURE OF THE DEFENDANT'S COOPERATION

On August 2, 2002, the defendant pleaded guilty to Count One of the indictment in this case and admitted that he and his co-defendants conspired to possess with intent to distribute in excess of 5 grams of cocaine base or "crack." At the time he agreed to plead guilty, the defendant also entered into a Cooperation Agreement with the government. Eaddy was debriefed on a number of occasions regarding his knowledge of narcotics trafficking activity and violence associated with the "Q&A" narcotics trafficking enterprise, a group of violent drug traffickers responsible for the distribution of massive quantities of crack-cocaine and heroin at various locations in Bridgeport from the early 1990's through 2000. Quinne Powell, a.k.a. "Q," and Aaron Harris, a.k.a. "Toast," were the leaders of the Q&A organization. For years Powell, Harris and their associates were undeterred, operating with impunity as they escaped criminal prosecution in the state by threatening, intimidating and even murdering witnesses against them.

---

[1] Counts Two and Three charge only co-defendant Ayala. In Count Two, Ayala is charged with Possession with Intent to Distribute heroin, cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), and in Count Three he is charged with Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. 922(k) and 924(a)(1)(B).

Eaddy was one of the government's most important cooperating witnesses against the Q&A organization, and one of the few witnesses in a position to testify against Quinne Powell. Eaddy testified before a federal grand jury regarding his knowledge of narcotics trafficking and violence committed by members of the organization. Eaddy testified in open court against Quinne Powell and Damon Walker, Powell's cousin and a high ranking lieutenant in the organization, before a sizeable audience composed of friends and family of the defendants at the recent Powell/Walker Rico trial before Judge Nevas. Indeed, the government called Eaddy as its first cooperating witness at this trial because of his ability to clearly articulate a detailed description of the incidents and events he testified about.

## IV. EVALUATION OF THE DEFENDANT'S COOPERATION

Guidelines Section 5K1.1 provides that the Court, when determining the appropriate extent of any downward departure may evaluate the following factors:

(1)   the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2)   the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3)   the nature and extent of the defendant's assistance;

(4)   any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5)   the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

### A. Significance of His Cooperation

Even prior to pleading guilty, Eaddy was debriefed and commenced providing information concerning his knowledge of narcotics trafficking by Quinne Powell, Aaron Harris, Damon Walker

and other Q&A members and the violence associated with their activity. As set forth above, Eaddy eventually entered into a cooperation agreement and testified before a federal grand jury in Bridgeport. Eaddy's testimony before the grand jury was credible and thoroughly corroborated by the physical evidence recovered in the case and by other cooperating witnesses. His testimony was an integral part to the Fifth Superseding Indictment the government sought in this case which added, among other things, an Obstruction/Witness Tampering and an additional narcotics trafficking conspiracy charge against Powell.

The obstruction charge, also one of the predicate acts charged in the Rico count, arose out of an incident that occurred when Eaddy was inadvertently transferred to the Corrigan Correctional Facility where Powell was being housed. Eaddy found out that Powell was at the same facility and immediately contacted Detective Sanford Dowling so that arrangements could be made to get him out of Corrigan. While Eaddy was waiting to be transferred out of Corrigan – he was transferred out the day after he was mistakenly sent there – Powell was on his way back from protective custody and saw Eaddy waiting in the holding cell through a glass partition. Powell told Eaddy he knew that Eaddy was cooperating, made a slashing motion to his throat and threatened Eaddy saying that all of the cooperating witnesses in the case would be "taken care of." Eaddy's description of this incident was consistent with and helped corroborate another cooperating witnesses, Jose Osorio, who Powell threatened while they were incarcerated together at the Bridgeport Correctional Facility, and who Damon Walker threatened while at another facility. Powell and Walker were both convicted of these obstruction counts.

At trial, Eaddy further described his intimate knowledge of Powell and Walker's drug trade. Eaddy had begun working for Powell, Harris and Walker in the early 1990's as a lookout and a street level dealer. He eventually rose to the rank of lieutenant, and later left the organization to pursue

his own drug trafficking blocks. Throughout the years he maintained contact with Powell and Walker and they frequently tried to recruit him to work at the various blocks they controlled. Eventually, Eaddy established his own block and Powell became one of his sources of supply. Through his testimony, Eaddy implicated Powell and Walker in drug trafficking dating back to the early 1990's when they distributed "pink-top" crack on the East Side of Bridgeport. Eaddy's testimony was especially valuable, however, because he was able to testify about much more recent drug activity that the defendants engaged in at the Greens Homes housing complex in the mid to late 1990s, and even more recently in the year 2000 when Powell supplied Eaddy's Maple Street drug block. This testimony was important in light of the defendants' claim that in the late 1990's and early 2000 they were legitimate business men who were not involved in the drug trade.

In addition, Eaddy provided background to the existence and operation of the various drug trafficking conspiracies charged by naming all of the other lieutenants and workers. Thus, corroborating other cooperating witnesses who testified at trial.

Finally, while Eaddy was incarcerated on this case he learned of the whereabouts of an individual wanted for the armed robbery of an elderly victim at a grocery store in Bridgeport. Eaddy provided the information to Special Agent Brad Ware who, in turn, provided it to Detective Richard Donaldson of the Bridgeport Police Department. Both Special Agent Ware and Detective Donaldson indicated that the information was credible and useful. Indeed, shortly after debriefing Eaddy, law enforcement officers arrested the individual in Waterbury, Connecticut at the address Eaddy had provided to them.

**B.     Truthfulness and Accuracy of Information Provided**

Oretegus Eaddy was always very straight forward with the investigators regarding his own criminal involvement and that of others. He did not try to inflate the culpability of others or

minimize his own involvement. The information which he provided was thoroughly corroborated through the testimony of other cooperating witnesses, cooperating defendants, police officer testimony and the seizure of physical evidence such as narcotics, firearms, bullet proof vests, and photographs. As a result of his testimony, defendants Quinne Powell and Damon Walker were all convicted after trial.

C.  **Risk of Injury to the Defendant**

Quinne Powell, Damon Walker, Aaron Harris and the Jones family and their associates are among the most violent drug traffickers ever to come to the attention of law enforcement in the City of Bridgeport, Connecticut. They regularly assaulted, shot and murdered people over minor and major disagreements. For example, Aaron Harris was previously arrested and charged with murder in Connecticut Superior Court. The witnesses against Harris were later themselves murdered. According to a cooperating witness in the Peeler prosecution, the Peelers looked up to Harris as an example of how to dispose of potential adverse witnesses.

Witnesses developed during the course the investigation and prosecution of the "Q&A" organization were frequently harassed, even in open court when testifying at trial. Indeed and as set forth above, Powell threatened Eaddy, and both Powell and Walker were convicted of obstruction and witness tampering charges. In short, by cooperating and testifying in open court, Eaddy has exposed himself to a very real threat of retaliation.

**CONCLUSION**

Based upon the foregoing the United States respectfully urges the Court to grant the government's motion and depart from the applicable Guidelines sentencing range, and, to the extent the district court deems it appropriate, from the statutory minimum term of imprisonment when imposing sentence on the defendant.

          Respectfully submitted,

          KEVIN J. O'CONNOR
          UNITED STATES ATTORNEY


By:    MARK RUBINO
        ASSISTANT U.S. ATTORNEY


For:   ALINA P. REYNOLDS
        ASSISTANT U.S. ATTORNEY
        915 LAFAYETTE BLVD.
        BRIDGEPORT, CT 06604
        (203) 696-3000
        FEDERAL BAR No. CT14968


        ALEX HERNANDEZ
        SUPERVISORY ASSISTANT U.S. ATTORNEY

CERTIFICATE OF SERVICE

      This is to certify that a copy of the within and foregoing has been mailed, postage prepaid, this 16th day of August, 2005, to:

Stephen Fitzgerald, Esq.
Garrison, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511

Jacqueline Carroll
United States Probation Officer
141 Church Street
New Haven, CT 06510

                                              _____
                                              ALINA P. REYNOLDS